1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   EASTERN DISTRICT OF CALIFORNIA
10
11  JO ANN ZEPHYR, et al.,              No. 2:11-cv-02224-MCE-CKD
12          Plaintiffs,
13      v.                             <u>ORDER</u>
14  SAXON MORTGAGE SERVICES, INC.
    et al.,
15
            Defendants.
16
                         ----oo0oo----
17
18      Before the Court is Defendant Saxon Mortgage Services,
19  Inc.'s ("Saxon") Motion to Dismiss Jo Ann Zephyr's ("Zephyr")
20  First Amended Class Action Complaint (ECF No. 21).  The Motion is
21  fully briefed.  Also before the Court is Saxon's Request for
22  Judicial Notice in Support of its Motion to Dismiss (ECF No. 22),
23  which is opposed (ECF No. 31), Plaintiff's Request for Judicial
24  Notice (ECF No. 31), and Saxon's Supplemental Request for
25  Judicial Notice (ECF No. 34).  For the reasons that follow, the
26  Requests for Judicial Notice (ECF Nos. 22, 32 and 34) are GRANTED
27  and Defendants' Motion to Dismiss (ECF No. 21) is DENIED.
28  ///

                                1

**BACKGROUND**

Zephyr is a California citizen and resident of Sacramento, who brings this putative class action on the basis of diversity jurisdiction under the Class Action Fairness Act ("CAFA") against Saxon, a Texas corporation, that she alleges made and recorded mortgage lending and/or servicing calls to individuals in California.  First Amended Complaint ("FAC") at 3-5.  Zephyr brings this action on behalf of herself and a class of "all California residents who received telephone calls from Defendants related to mortgage lending and/or servicing."  FAC at 5.  Zephyr contends that Saxon recorded its outbound calls from Texas to the class members in California without obtaining their consent.  FAC at 7, 9-10.  Zephyr's First Cause of Action alleges that these calls violated California Penal Code ("Penal Code") § 632, which prohibits the intentional recording of confidential communications without the consent of all parties to the communication.[1]  Id.

///

///

---

[1] Section 632(a) provides, in relevant part,

Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

1  Zephyr contends that Saxon's calls were confidential because

2  plaintiffs had an objectively reasonable expectation their

3  conversations were not being recorded.[2]  Id. Zephyr's Second

4  Cause of Action alleges that Saxon also violated Penal Code

5  § 632.7, which prohibits the intentional recording of any

6  communication without the consent of all parties where one of the

7  parties is using a cellular or cordless telephone.[3]  FAC at 10.

8       Zephyr contends that she and the proposed Class meet the

9  class requirements under Rule 23 of the Federal of Civil

10  Procedure.  FAC at 5-9.

11  ///

12  ///

13

14       [2] Section 632(c) defines confidential communications.  It
    states:

        The term "confidential communication" includes any
16      communication carried on in circumstances as may
        reasonably indicate that any party to the communication
17      desires it to be confined to the parties thereto, but
        excludes a communication made in a public gathering or
18      in any legislative, judicial, executive or
        administrative proceeding open to the public, or in any
19      other circumstance in which the parties to the
        communication may reasonably expect that the
20      communication may be overheard or recorded.

21  [3] Section 632.7 states, in relevant part:

22      Every person who, without the consent of all parties to
        a communication, intercepts or receives and
23      intentionally records, or assists in the interception
        or reception and intentional recordation of, a
24      communication transmitted between two cellular radio
        telephones, a cellular radio telephone and a landline
25      telephone, two cordless telephones, a cordless
        telephone and a landline telephone, or a cordless
26      telephone and a cellular radio telephone, shall be
        punished by a fine not exceeding two thousand five
27      hundred dollars ($2,500), or by imprisonment in a
        county jail not exceeding one year, or in the state
28      prison, or by both that fine and imprisonment.

On behalf of the Class, Zephyr seeks statutory damages in the amount of $5,000 for each violation of Sections 632 or 632.7 of the Penal Code, as well as injunctive relief, attorneys fees and costs, and any other relief the Court deems just and proper.  FAC at 11.

Saxon moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[4]  Motion to Dismiss ("MTD") (ECF. No. 21).  Saxon does not dispute that it made calls from Texas to actual or potential customers in California, or that some of these calls went to cellular or cordless telephones.  MTD at 1.  Saxon also does not dispute that some or all of these calls may have been recorded in violation of Penal Code §§ 632 or 632.7.  Id.  Rather, Saxon moves to dismiss on the basis that the application of Penal Code §§ 632 or 632.7 to Saxon's alleged conduct violates the dormant Commerce Clause of the United States Constitution.[5]

///

///

///

///

///

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[5] The Commerce Clause of the Constitution explicitly grants Congress authority to regulate interstate commerce.  See U.S. Const. art. I, § 8, cl. 3, which states that "Congress shall have the power to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  The Commerce Clause therefore implicitly limits the regulatory authority of the states over interstate commerce.  This inference is commonly referred to as the dormant Commerce Clause.  See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d 521, 523 (9th Cir.2009).

1
2

## REQUESTS FOR JUDICIAL NOTICE

3      Both Saxon and Zephyr have filed requests seeking judicial
4  notice under Rule 201.  (See ECF Nos. 22 and 32.)  Saxon requests
5  that the Court take judicial notice of the legislative history of
6  Penal Code Section 632 and attaches portions of that history as
7  an exhibit to its Request.  (ECF No. 22.)  Zephyr opposes (ECF
8  No. 31), arguing that the statute is unambiguous, therefore the
9  Court need not resort to a review of the legislative history.
10  (ECF 31 at 1-4.)  Zephyr seeks judicial notice of a California
11  Department of Corporations' Mortgage Lender and Servicer license
12  for Saxon. (ECF No. 32.)  That Request is unopposed.  Finally,
13  Saxon filed its Supplemental Request for Judicial Notice, which
14  attaches excerpts from the legislative history of Section 632.7
15  (ECF No. 34.)

16      The Court "may take judicial notice of 'matters of public
17  record' without converting a motion to dismiss into a motion for
18  summary judgment." Lee v. City of L.A., 250 F.3d 668, 689 (9th
19  Cir. 2001).  The matters of which a court may take judicial
20  notice should be "generally known" or "capable of accurate and
21  ready determination by resort to sources whose accuracy cannot
22  reasonably be questioned." Fed. R. Evid. 201(f); U.S. v. Camp,
23  723 F.2d 741, 744 (9th Cir. 1984).

24      Having reviewed the exhibits to Saxon's and Zephyr's
25  Requests for Judicial Notice, the Court finds that it may take
26  judicial notice of all of the attached documents.
27  ///
28  ///

5

Although Zephyr objects to the admission of some of the legislative history, Zephyr does not contest that these are readily available public documents or challenge their authenticity.  Furthermore, there is no dispute that the documents relate to the matter at issue: specifically, the meaning of Section 632 of the Penal Code.  Similarly, Zephyr's Request for Judicial Notice relates to a readily available public document and there is no dispute as to its authenticity.  The Court therefore GRANTS the parties' requests for judicial notice. (ECF Nos. 22, 32 and 34.)

## LEGAL STANDARD UNDER RULE 12(B)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell. Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  Id.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

1  (Internal citations omitted.)  A court is not required to accept
2  as true a "legal conclusion couched as a factual allegation."
3  <u>Ashcroft v. Iqbal</u>,129 S. Ct. 1937, 1949-50 (2009) (quoting
4  <u>Twombly</u>, 550 U.S. at 555).  "Factual allegations must be enough
5  to raise a right to relief above the speculative level."
6  <u>Twombly</u>, 550 U.S. at 555.

7      Furthermore, "Rule 8(a)(2) . . . requires a 'showing,'
8  rather than a blanket assertion, of entitlement to relief."
9  <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations omitted).
10 "Without some factual allegation . . . , it is hard to see how a
11 claimant could satisfy the requirements of providing not only
12 'fair notice' of the nature of the claim, but also 'grounds' on
13 which the claim rests."  <u>Id.</u>  (citation omitted).  A pleading
14 must contain "only enough facts to state a claim to relief that
15 is plausible on its face."  <u>Id.</u> at 570.  If the "plaintiffs . . .
16 have not nudged their claims across the line from conceivable to
17 plausible, their complaint must be dismissed."  <u>Id.</u>

18     A court granting a motion to dismiss a complaint must then
19 decide whether to grant a leave to amend.  Leave to amend should
20 be "freely given" where there is no "undue delay, bad faith or
21 dilatory motive on the part of the movant, . . . undue prejudice
22 to the opposing party by virtue of allowance of the amendment,
23 [or] futility of the amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S.
24 178, 182 (1962).  Dismissal without leave to amend is proper only
25 if it is clear that "the complaint could not be saved by any
26 amendment."  <u>Intri-Plex Techs., Inc. v. Crest Group, Inc.</u>,
27 499 F.3d 1048, 1056 (9th Cir. 2007) (internal citations omitted).
28 ///

1      **ARGUMENT AND ANALYSIS**

2

3      **A.   Saxon's Contentions**

4

5          Saxon contends that California Penal Code §§ 632 and 632.7,

6      which require unanimous consent from all parties to the recording

7      of a telephone call, unconstitutionally conflict with the law of

8      Texas (and other states, as well as federal law), which require

9      only one party's consent to the recording of a call.  MTD at 4-5.

10     Specifically, Saxon states that Texas Penal Code § 16.02 permits

11     recording where only one-party consents.[6]  Id.

12         Saxon does not raise a conflict of laws argument, rather

13     Saxon argues that §§ 632 and 632.7 impose an impermissible burden

14     on interstate commerce and therefore violate the dormant Commerce

15     Clause.  MTD at 6-8.

16     ///

17     ///

18

---

19         [6] In relevant part, Texas Penal Code § 16.02, "Unlawful
       Interception, Use, or Disclosure of Wire, Oral, or Electronic
20     Communications" makes it unlawful to "intentionally intercept[],
       endeavor[] to intercept, or procure[] another person to intercept
21     or endeavor to intercept a wire, oral, or electronic
       communication."  Section 16.02(b).  However, § 16.02(c) carves
22     out the one party exception, stating that "[i]t is an affirmative
       defense to prosecution under Subsection (b) that:"
23
           (4) a person not acting under color of law intercepts a
24         wire, oral, or electronic communication, if:

25             (A)  the person is a party to the communication;
           or
26
               (B)  one of the parties to the communication has
27         given prior consent to the interception, unless the
           communication is intercepted for the purpose of
28         committing an unlawful act.

8

Saxon contends that a telephone is an instrument of interstate commerce and a state's attempt to regulate interstate commerce, specifically conduct occurring entirely in another state – here, calls made from Texas – violates the Commerce Clause.  Id. (citing Healy v. The Beer Inst., Inc., 491 U.S. 324 (1989)).

In essence, Saxon presents two arguments in support of its position.  First, Saxon contends that application of §§ 632 and 632.7 to Saxon's calls made from Texas constitutes a per se violation of the Commerce Clause.  Saxon argues that because it is an out-of-state business – and its practice of recording calls without both parties' consent is legal under Texas law – by requiring unanimous consent to the recording of calls, §§ 632 and 632.7 impermissibly interfere with Texas law.[7]  Id. at 7-11. More generally, Saxon argues that telecommunications should be protected from inconsistent regulations.  Id. at 13-14.

Second, Saxon argues that application of §§ 632 and 632.7 to its calls violates the dormant Commerce Clause because, on balance the burden on interstate commerce outweighs any benefit to California.  Id. at 11-13.  In particular, Saxon asserts that out-of-state businesses will have to modify their practices (at some burden and expense) when contacting customers who may be located in all-consent states, which Saxon asserts outweighs whatever benefits California residents may derive from being informed that their calls may be recorded.  Id. at 11-13, 14-17.

---

[7] Furthermore, Saxon contends that because under current telephone rules, telephone numbers, particularly cell phone numbers, may relocate with their owners, it is impossible for Saxon to know whether the individual Saxon calls is actually in a one-party consent state or a two-party consent state, therefore California's Penal Code impermissibly burdens Saxon.

Saxon points to the legislative history of California's Privacy Act (Penal Code §§ 630 *et seq.*) to argue that the purpose of the Act was never to impose liability or fines on out-of-state businesses for recording calls with their California customers. Id. at 14-17.

## B.   Zephyr's Contentions and Saxon's Reply

Zephyr contends that identical dormant Commerce Clause arguments as those raised by Saxon here have already been considered and rejected by the California Supreme Court in Kearney v. Salomon Smith Barney, 39 Cal. 4th (2006) and that the Kearney decision controls.  (Opposition, ECF No. 30.)  In addition, Zephyr argues that Saxon, pursuant to its California servicing license, should be required to comply with California law, including the unanimous consent provisions of §§ 632 and 632.7.  Id.

In its Reply, Saxon argues that Kearney is not controlling authority.  (Reply, ECF No. 33.)  Saxon first contends that Kearney was wrongly decided, but then goes on to attempt to limit and distinguish Kearney, arguing that Kearney is not binding on this Court's analysis. Id. at 1-4.  In addition, Saxon again argues (1) that the legislative history of § 632 supports its position, and (2) that Zephyr's interpretation of §§ 632 and 632.7 violate the dormant Commerce Clause.  Id. at 4-9.

///

///

///

10

Furthermore, Saxon argues that its status as a licensed mortgage servicer in California is irrelevant because §§ 632 and 632.7 are unconstitutional, but, in any event, its license is irrelevant because its status as a mortgage servicer is inapplicable or incidental to California's wiretapping and eavesdropping laws. Id. at 9-10.

## C.  Analysis

Because the facts are undisputed and because Saxon does not challenge the application of California law, the only issue before the Court is whether the dormant Commerce Clause renders §§ 632 and 632.7 unconstitutional as applied in the context of Saxon's recorded interstate calls to California residents. Because the resolution of this dispute is informed by the California Supreme Court's decision in Kearney, a discussion of Kearney follows.

In Kearney, Kelly Kearney and another client of the brokerage firm Salomon Smith Barney (SSB) filed an action against SSB in California state court on behalf of themselves and on behalf of all other SSB clients in California. Kearney, 29 Cal. 4th at 102. Plaintiffs alleged that employees of SSB's Atlanta-based branch recorded telephone conversations without their clients' consent in violation of California's all-consent rules established under § 632. Id. at 99, 119-21. Georgia (like Texas here) has a one-party consent statute. Id. at 99, 121-22.

///

///

1  Plaintiffs sought injunctive relief to restrain SSB from
2  recording calls in the future, as well as damages and restitution
3  for past calls.  Id. at 102.

4        The trial court sustained SSB's demurrer, concluding that
5  under both federal law and Georgia law one-party consent was
6  sufficient and any attempt to impose the all-party consent rule
7  to recordings made in Georgia would violate the Commerce Clause.
8  Id. at 102-03.  On appeal, the Court of Appeal affirmed the trial
9  court, concluding that, under a choice-of-law analysis, Georgia
10 had the greater interest in having its one-party consent law
11 applied.  Id. at 103.  The California Supreme Court thereafter
12 granted Plaintiffs' petition for review to consider the choice of
13 law issue.  Id.

14       Before turning to the choice of law issue, the California
15 Supreme Court explicitly addressed several of SSB's arguments
16 which are essentially identical to arguments Saxon raises here.
17 The Court rejected SSB's argument that California's legislation
18 exceeded the limits of the due process clause by imposing
19 California law on activities conducted outside the state as to
20 which California had no legitimate interest, stating that:

21       The present legal proceedings are based upon defendant
         business entity's alleged policy and practice of
22       recording telephone calls of *California* clients, while
         the clients are *in California*, without the clients'
23       knowledge or consent.  California clearly has an
         interest in protecting the privacy of telephone
24       conversations of California residents while they are in
         California sufficient to permit this state, as a
25       constitutional matter, to exercise legislative
         jurisdiction over such activity.
26

27 Id. at 104-05.
28 ///

                              12

1  In addition, the Court held that the federal law does not preempt
2  the application of California's more protective privacy
3  provisions, noting that states could enact more restrictive
4  privacy laws than those imposed by federal law.  Id. at 105-06
5  (emphasis in original).

6      Particularly relevant here, the Court held that the
7  application of Section 632 would not constitute a violation of
8  the dormant Commerce Clause.  Id. at 106-07.  The Court rejected
9  SSB's reliance on Healy, 491 U.S. 324, which SSB, like Saxon
10 here, argued stood for the proposition that a state statute may
11 not be applied to commerce that applies wholly outside a state's
12 borders.  Id.  The Court noted, inter alia, that Healy was
13 inapplicable because the conduct at issue did not occur wholly
14 outside Texas, since the calls were made from Georgia but
15 answered in California.  Id.  Furthermore, the Court held that
16 California had a significant interest in protecting the privacy
17 of its residents' telephone conversations that was sufficient for
18 California to exercise legislative jurisdiction over such
19 activity.  Id. at 104-05.

20     Section 632 therefore did not affect recorded conversations
21 that did not involve non-Californian clients or consumers.  Id.
22 at 107.  Furthermore, the California Supreme Court concluded that
23 while SSB might attempt to demonstrate at a later stage of the
24 litigation that it would be impossible, infeasible, or unduly
25 burdensome to comply with the California statute, it could not
26 prevail at the demurrer stage of the proceeding on that theory.
27 Id.
28 ///

13

1    In considering scope and application of § 632, the

2    California Supreme Court noted that the California legislature

3    had

> enacted a broad, protective invasion-of-privacy statute
> in response to what it viewed as a serious and
> increasing threat to the confidentiality of private
> communications resulting from then recent advances in
> science and technology that had led to the development
> of new devices and techniques for eavesdropping upon
> and recording such private communications.

8    Id. at 115 (citing Stats. 1967, ch. 1509, § 1, pp. 3584-3588,

9    enacting Pen. Code, §§ 630-637.2.).   The Court noted that the

10   statute created a private right of action authorizing any person

11   injured under the statute to recover damages and obtain

12   injunctive relief.   Id. at 115-16.   After analyzing the choice of

13   law issue, the California Supreme Court ultimately determined

14   that California law applied.   Id. at 115-32.

15   In the present case, the Kearney decision is not controlling

16   insofar as it determines the constitutionality of §§ 632 and

17   632.7 under the dormant Commerce Clause.   See, e.g., Erie R.R.

18   Co. v. Tompkins, 304 U.S. 78 (1938) ("[e]xcept in matters

19   governed by the Federal Constitution or by acts of Congress, the

20   law to be applied in any case is the law of the state).   However,

21   Kearney's constitutional analysis is persuasive and its

22   determinations regarding the meaning and application of §§ 632

23   and 632.7 are controlling.   See id.

24   ///

25   ///

26   ///

27   ///

28   ///

14

1    Turning to the constitutionality of §§ 632 and 632.7, under

2  the dormant Commerce Clause, "[i]f a statute 'regulates

3  even-handedly to effectuate a legitimate local public interest,

4  and its effects on interstate commerce are only incidental, it

5  will be upheld unless the burden imposed on such commerce is

6  clearly excessive in relation to the putative local benefits.'"

7  Sullivan v. Oracle Corp., 662 F.3d 1265, 1271 (2011) (quoting

8  Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).  Stated

9  another way, "there are two broad categories of state regulations

10 burdening interstate commerce: (1) those that directly burden

11 interstate commerce or otherwise discriminate against

12 out-of-state interests; and (2) those that incidentally burden

13 commerce."  Pacific Merchant Shipping Ass'n v. Goldstene,

14 639 F.3d 1154, 1177 (9th Cir. 2011).  Those that fall into the

15 first category are subject to strict scrutiny and are generally

16 struck down, while those falling into the second category are

17 subject to a balancing test.  Id.  "Under this balancing test,

18 regulations may violate the Commerce Clause if the burdens they

19 impose so outweigh the putative benefits so as to render the

20 regulations unreasonable or irrational."  Id.

21    Contrary to Saxon's contentions, California §§ 632 and 632.7

22 do not regulate conduct that occurs in entirely another state as

23 Saxon's calls are made to California residents' telephones and

24 the conversations are with California residents.[8]

25

26    [8] In addition, as Zephyr notes, Saxon is a licensed mortgage
   servicer in California, and is therefore charged with both
27 knowledge of and compliance with California laws.  Cal Fin. Code
   § 50130(g) ("[a] mortgage servicer licensed to service mortgage
28                                                    (continued...)

1   Therefore, Healy does not govern here.  Furthermore, the purpose

2   of California's Privacy Act does not appear to be to regulate

3   out-of-state commerce or conduct, but to protect California

4   residents from having their conversations recorded by either in-

5   state or out-of-state callers without all parties' consent.  See,

6   Kearney, 29 Cal. 4th at 115.  There does not appear to be any

7   differential treatment of in-state versus out-of-state callers:

8   §§ 632 and 632.7 apply equally to in-state and inter-state calls

9   that are recorded.  The effects of §§ 632 and 632.7 therefore

10  appear to be incidental to interstate commerce and strict

11  scrutiny does not apply.  See, e.g., Goldstene, 639 F.3d at 1177,

12  1179 (California's vessel fuel rules held not to be a per se

13  violation of the dormant commerce clause where the purpose of the

14  rules was to protect the health and safety of California

15  residents and did not discriminate against out-of-state

16  interests).

17  ///

18  ///

19

20

21      [8](...continued)
    loans shall comply with all applicable requirements of California
22  and federal law . . . .").  While Zephyr is, of course, free to
    contend that §§ 632 and 632.7 are unconstitutional, as the Court
23  in Kearney noted,

24          at least as a general matter, a company that conducts
            business in numerous states ordinarily is required to
25          make itself aware of and comply with the law of a state
            in which it chooses to do business . . . . [A] state
26          generally does not exceed its constitutional authority
            when it applies its law in such a setting, even if the
27          law may implicate some action or failure to act that
            occurs outside the state.

28  Kearney, 39 Cal. 4th at 105.

16

1    Saxon argues that even if the effect of §§ 632 and 632.7 on
2    interstate commerce is incidental, the balance still tips in its
3    favor because the burden on out-of-state businesses that record
4    calls with California residents outweighs whatever privacy
5    benefit is received by California residents, but this is a legal
6    conclusion couched as a factual statement: Saxon does not present
7    any evidence that would support this conclusion.  Specifically,
8    Saxon has not demonstrated any particular burden that results
9    from complying with California's all-consent recording rules,
10   much less how that burden outweighs the privacy rights of
11   California residents.  As yet, Saxon has presented no evidence
12   related to the cost of complying with California's all consent
13   laws.

14   Saxon's legislative history argument is also unavailing.  On
15   the basis of several selections of legislative history, Saxon
16   asks this Court to conclude that §§ 632 and 632.7 were never
17   intended to protect the type of telephone call recording that
18   Saxon allegedly made (which Saxon refers to as "business
19   telephone monitoring").  This, however appears to be contrary
20   both to the express language of the statute, as well as to the
21   California Supreme Court's decision in <u>Kearney</u>.  First, both 632
22   and 632.7 are unambiguous and broad in the scope of their
23   protection: together they prohibit "[e]very person" from
24   recording any confidential communication, including telephone
25   calls.  See §§ 632(a) and 632.7.
26   ///
27   ///
28   ///

17

Second, in <u>Kearney</u>, the California Supreme Court considered the scope of Section 632, including the legislative history of Section 632, and held that Section 632 applied to an out-of-state business that was recording calls with its California customers without their consent. <u>Kearney</u>, 39 Cal. 4th at 124-26. If there was any doubt about whether the statute clearly and unambiguously covered the type of calls at issue here, the <u>Kearney</u> decision dispelled it.

In sum, the Court holds that the application of §§ 632 and 632.7 to Saxon's recorded calls made from Texas to California customers does not violate the dormant Commerce clause. On balance, the burden Section 632 imposes on interstate commerce appears to be incidental and, at this stage of the litigation, Saxon has presented no evidence of any particular burden that would compel this Court to conclude that the burden on interstate commerce so outweighed the benefit to California residents as to render §§ 632 and 632.7 unreasonable and irrational. <u>See</u>, <u>e.g.</u>, <u>Goldstene</u>, 639 F.3d at 1177.

///
///
///
///
///
///
///
///
///
///

18

**CONCLUSION**

    For the reasons set forth above, the Requests for Judicial Notice (ECF Nos. 22, 32 and 34) are GRANTED and Defendants' Motion to Dismiss (ECF No. 21) is DENIED.

    IT IS SO ORDERED.

Dated: June 4, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

19